FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT. E.D.N.Y.
★ AUG 13 2007 ★
BROOKLYN OFFICE

ORIGINAL
D≠F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
JOSEPH RISITANO,

        Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
----------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 06-CV-2206 (FB)

*Appearances:*
*For the Plaintiff:*
JOHN E. ANTONOWICZ, ESQ.
Fusco, Brandenstein & Rada, P.C.
180 Froehlich Farm Boulevard
Woodbury, NY 11797-0307

*For the Defendant:*
MICHAEL J. GOLDBERGER, ESQ.
United States Attorneys Office
Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

        Plaintiff Joseph Risitano ("Risitano") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, the matter is remanded for further proceedings.

**I.**

        On October 29, 2001, Risitano, a former bus driver, applied for DIB, alleging that he was disabled due to injuries sustained in an automobile accident. After his application was denied, he requested a hearing before an administrative law judge ("ALJ"), which was held on May 3, 2004. The ALJ subsequently rendered an unfavorable decision,

which Risitano appealed to the Commissioner's Appeals Council., which vacated the ALJ's decision and remanded for further proceedings; in accordance with that remand, a supplemental hearing was held on July 19, 2005.

In a decision dated September 20, 2005, the ALJ applied the familiar five-step process and found (1) that Risitano had "not engaged in 'substantial gainful activity' [since] his alleged onset date," A.R. at 35,[1] (2) that he had "'severe' impairments consisting of resolved cervical, left shoulder and lumbar strains/displacements plus a thoracic strain," *id.*, and (3) that his impairments did not meet or equal the criteria for any impairment considering *per se* disabling under the Commissioner's Listing of Impairments. Before turning to steps four and five, the ALJ found that, despite his impairments, Risitano was able to "sit/stand/walk for a total of 6 hours in an 8-hour workday and lift/carry objects weighing a total of 20 pounds," *id.* at 34; therefore, that he had the residual functional capacity ("RFC") "to perform the demands of sedentary-to-light exertion level work." *Id.* Applying that RFC, the ALJ found, at step four, that Risitano was "unable to perform his 'past relevant work." *Id.* at 35. At step five, however, the ALJ found that Risitano's RFC allowed him to perform "[other] work which exists in significant numbers in the national economy." *Id.* Based on his step-five determination, the ALJ concluded that Risitano was not disabled within the meaning of the Social Security Act.

The ALJ's decision became the final decision of the Commissioner on March 24, 2006, when the Appeals Council denied Risitano's request for review. This action

---

[1] "A.R." refers to the administrative record.

2

followed.

## II.

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Risitano challenges only the ALJ's step-five finding that he was able to perform other work existing in the national economy; in particular, he argues that the ALJ's finding was tainted by an erroneous determination of his RFC. The Court agrees that the ALJ's RFC determination was flawed in respect to (A) Risitano's exertional limitations (specifically, his ability to sit and to stand or walk), and (B) his nonexertional limitations.

### A. Exertional Limitations

In determining that Risitano could perform "light-to-sedentary" work, the ALJ purported to rely on "the entire record," but "especially the opinions of Drs. Lee and Greenspan," A.R. at 34, who were, respectively, Risitano's treating physiatrist and treating chiropractor. According to the Commissioner's regulations, a treating source's opinion regarding a claimant's RFC – as opposed to the nature and severity of the claimant's impairments – is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(e) ("[T]he final responsibility for deciding . . . issues [such as RFC] is reserved to the Commissioner.

3

We will not give any special significance to the source of an opinion on [such] issues . . . .").[2] Nevertheless, the ALJ concluded that "more significant weight should be given to the treating sources' medical opinions due to their being well-supported by medically accepted clinical and laboratory diagnostic techniques – as well as by personal, long-term familiarity with the claimant's medical condition and a better opportunity to know and observe him as an individual." *Id.*

The opinions of Drs. Lee and Greenspan do not, however, support the ALJ's conclusion. Dr. Lee opined that in an eight-hour workday, Risitano could stand and walk for only two to three hours and could sit for only two to three hours. Similarly, Dr. Greenspan opined that in an eight-hour workday, Risitano could stand and walk for only two hours and could sit for only two to five hours, which he later amended to only two hours. Contrary to the ALJ's conclusion, these opinions are consistent with Risitano's subjective description of his limitations. *See* A.R. at 319 ("Q. How many days a week [do you work as a hot dog vendor]? A. Two, three, it depends. Q. How many hours do you put in a day? A. Three to four hours, five hours sometimes.").

The ALJ improperly conflated Risitano's ability to stand or walk and his ability to sit into a single ability to "sit/stand/walk." A.R. at 34. The Commissioner's definitions of light and sedentary work, however, require the two abilities to be treated separately: Sedentary work generally requires the ability to sit for approximately six hours,

---

[2]Additionally, Dr. Greenspan's opinion was not entitled to controlling weight because a chiropractor is not an "acceptable medical source" under the Commissioner's regulations. *See Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995) (citing 20 C.F.R. § 404.1513(a)).

4

*see* SSR 83-10, 1983 WL 31251, at *5 (SSA 1983) ("Since being on one's feet is required occasionally at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."); light work generally requires the ability to stand and walk for approximately six hours. *See id.* at *6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."). *Id.* at *6. According to Risitano's treating sources, he can do neither.[3]

That the assessments of Drs. Lee and Greenspan do not support the ALJ's conclusion that Risitano could perform light or sedentary work is confirmed by a hypothetical based on those assessments propounded by Risitano's attorney to the vocational expert ("VE") who testified at the July 19th hearing:

> ATTY: Assume an individual the claimant's age, with his education, and work activity, who experiences neck and back pain that limit him to standing and walking no more than 2 or 3 hours out of an 8-hour work day for periods of not more than 30 minutes at a time, sitting for a total of 2 to 3 hours out of an 8-hour work day. . . 30 minutes at a time, and lifting up to 20 pounds

---

[3]Even if the definitions of light and sedentary work depended on an ability to do a combination of walking, standing and sitting, the opinions of Risitano's treating sources would not support the ALJ's RFC determination. As Risitano's counsel noted at oral argument, RFC measures a claimant's ability to do work on a "regular and continuing basis," which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (SSA). Even assuming that Risitano could spend a combined total of 6 hours walking, standing and sitting, that would still leave two hours in each workday in which he could do nothing but lie down; unsurprisingly, neither light nor sedentary work makes such an allowance.

|  | with the need to recline occasionally meaning up one-third of the time over the course of an 8-hour day. Would the claimant be able to perform any of his past relevant work with those limitations? |
|---|---|
| VE: | No. |
| ATTY: | Would there be any other work he could perform? |
| VE: | No. |

A.R. at 355-56.

The Court is mindful that the ALJ's decision briefly referenced other evidence regarding Risitano's RFC. Reliance on this other evidence, if that is what the ALJ intended, is problematic:

1. In a March 2002 Physical Residual Functional Capacity Assessment, "F. Glick" opined that in an eight-hour workday, Risitano could stand and/or walk for about 6 hours and could sit for about six hours. Glick, however, is a "disability examiner," a state employee tasked with making disability determinations at the initial stage of the administrative process. While the Commissioner allows disability examiners to "assist in completion of the RFC assessment forms," a medical (or psychological) consultant must sign the form "to attest that he/she is responsible for its content, including the findings of fact and discussion of supporting evidence." Social Security Administration, *Programs Operations Manual System* ("POMS") § DI 24510.005, ¶ B.2.b; *see also* 20 C.F.R. § 404.1546(a) ("When a [disability examiner] makes the disability determination, a State agency medical or psychological consultant(s) is responsible for assessing your residual functional

capacity."). The record does not reflect that Glick is a qualified medical consultant; indeed, he (or she) crossed out "Medical Consultant's Signature" on the assessment form.

2. Dr. Donald Goldman, a medical expert who testified at the July 19th hearing, stated that "based upon the records [he had]," he could not identify any limitations that "would prevent sedentary work, or any other kind of work." A.R. at 342. Read as a whole, however, Dr. Goldman's testimony is not an affirmative opinion that Risitano had no work-related limitations; rather, it reflects Dr. Goldman's inability to opine about Risitano's condition. *See id.* at 328 ("Q. Can [the medical records] tell you anything about this condition prior to the expiration [of Risitano's insured status on] December 31, 2000? A. No.").

3. In a June 2003 orthopedic evaluation, Dr. Robert DePorto, a medical examiner for Workers' Compensation, opined that as of that date, Risitano suffered from a "mild temporary disability," but was "capable of working with restrictions of no lifting, pushing or pulling or over ten pounds [and] no operating a motor vehicle or performing repetitive or strenuous activities involving the upper extremities." *Id.* at 33 (citing Ex. 4F). Assuming Dr. DePorto's evaluation can be read to imply that these were Risitano's *only* limitations, such an opinion would be inconsistent with the opinions of Drs. Lee and Greenspan. If the ALJ intended to credit Dr. DePorto's opinion over those of Risitano's treating sources, who, by the ALJ's own admission, had "personal, long-term familiarity with the claimant's medical condition and a better opportunity to know and observe him as an individual," A.R. at 34, he was required to explain his reasons for doing so, *see* SSR

96-5p, 1996 WL 374183, at *6 (SSA 1996) ("Treating source opinions on issues reserved to the Commissioner will never be given controlling weight. However, the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)."); this he failed to do.

**B. Nonexertional Limitations**

In addition to Risitano's exertional limitations, the record is replete with references to nonexertional limitations: Drs. Lee and Greenspan both opined that Risitano was limited in his ability to climb, kneel, balance, crouch, crawl and stoop; they further opined that he would frequently need to recline during the workday. Although the ALJ elicited testimony from the VE regarding the work-related effects of Risitano's exertional limitations, he did not ask the VE to assess the effects, if any, of these nonexertional limitations; this, too, was error. *See Lugo v. Chater*, 932 F. Supp. 497, 504 (S.D.N.Y. 1996) ("Proper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform.").

### III.

To the extent that the ALJ intended to rely on the opinions of Drs. Lee and Greenberg in support of his conclusion that Risitano retained the RFC to perform light or sedentary work, that reliance was error. To the extent that the ALJ intended to credit other medical evidence over those opinions, he failed to adequately explain his reasons for doing so. Thus, remand is necessary for the ALJ to clarify the meaning of his RFC determination. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996) ("Remand is particularly appropriate where,

as here, we are unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision." (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982))).

If, on remand, the ALJ confirms that he intended to rely on the opinions of Drs. Lee and Greenberg, then he must, consistent with the VE's testimony, conclude that Risitano cannot perform any work existing in the national economy. If, on the other hand, the ALJ did not intend to rely on those opinions, then he must identify the evidence he did decide to rely on and thoroughly explain his the reasons for his decision; he must then address the work-related limitations, if any, imposed by the nonexertional limitations reflected the record.

**SO ORDERED.**

/signed/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 9, 2007